MIKE B. MARTIN, Respondent, v. MAXINE PARKINS, Floyd L. Parkins, His Guardian ad Litem, and Floyd L. Parkins, Appellants.

(213 N. W. 574.)

**Negligence — driver blinded by sun — negligence question for jury.**

1. Ordinarily the question of negligence is a question of fact to be determined by the jury and becomes a question of law only when reasonable men can draw but one conclusion from the evidence. *Held*, for reasons stated in the opinion, that whether there was negligence in driving the automobile in the instant case was a question of fact for the jury.

**New trial — appeal and error — discretion of court — supreme court review evidence — when and to what extent.**

2. Whether a new trial shall be granted rests largely in the sound discre-

Annotation.—(1) The question of negligence and contributory negligence ordinarily one for the jury, see annotation in 16 A.L.R. 1178; 33 A.L.R. 190; 20 R. C. L. 166; 3 R. C. L. Supp. 1040; 4 R. C. L. Supp. 1342; 5 R. C. L. Supp. 1085; 6 R. C. L. Supp. 1195.

tion of the trial court and its action in granting a new trial will not be disturbed on appeal except in case of abuse of discretion; and where a new trial is granted on the ground that the evidence is insufficient to sustain the verdict or judgment, the reviewing court will consider and weigh the evidence only so far as may be necessary to determine the question whether the trial court acted within its discretion.

Opinion filed April 21, 1927.

Appeal and Error, 4 C. J. § 2813 p. 830 n. 45; § 2816 p. 833 n. 57; § 2874 p. 905 n. 35. Motor Vehicles, 42 C. J. § 625 p. 912 n. 36; § 1085 p. 1255 n. 60. Negligence, 29 Cyc. p. 428 n. 75; p. 629 n. 46; p. 630 n. 47; p. 635 n. 68. New Trial, 29 Cyc. p. 1008 n. 48; p. 1009 n. 54.

Appeal from the District Court of Hettinger County, *Berry,* J. Affirmed.

*Harvey J. Miller,* for appellants.

"A driver of a team and wagon who looked and listened for a car prior to going on a street car track and who neither saw nor heard a car was not negligent as a matter of law for not looking for a car within a minute thereafter while driving 470 feet along the track." Bensiek v. St. Louis Transit Co. 125 Mo. App. 121, 102 S. W. 587.

"Where the testimony is conflicting or for any cause there is a reasonable doubt as to the facts, or as to the inferences to be drawn from them, negligence is a question for the jury." Solberg v. Schlosser, 20 N. D. 307; Welch v. Fargo & M. Street R. Co. 24 N. D. 463.

"As a general proposition, the credibility of an explanation offered to rebut a prima facie case, afforded by an injury is a question for the jury." Leiferman v. White, 40 N. D. 150, 168 N. W. 569.

"If there be shown by any facts bearing upon the question of a loss or injury and they afford room for fair minded men to conclude therefrom that one theory of the case is better supported than the other, the question cannot be properly withdrawn from the jury. Farmers Mercantile Co. v. Northern P. R. Co. 27 N. D. 302, 146 N. W. 550.

"The question of negligence becomes a question of law only when upon the undisputed facts, reasonable men can draw but one conclusion. When reasonable minds may differ the question is for the jury." Tyke v. Jamestown, 15 N. D. 157, 107 N. W. 359; La Point v. Hodgins Transit Co. 48 N. D. 1032, 188 N. W. 166.

"When the nature of the evidence in an action for damages is such that no verdict for the plaintiff can be returned except based upon mere conjecture, surmise or speculation, it is proper for the trial court to direct a verdict for the defendant." Scharer v. Schlaberg, 18 N. D. 421, 122 N. W. 1000.

"In an action under the statute providing for the recovery of damages for death by wrongful act of the defendant, the contributory negligence of the plaintiff beneficiary is a defense." Scharer v. Schlaberg, 18 N. D. 421, 122 N. W. 1000; Kuchler v. Milwaukee Electric R. Co. (Wis.) 146 N. W. 1133.

"Negligence must be proven as the proximate cause of the injury." 17 C. J. 1205.

*Jacobsen & Murray,* for respondent.

"Drivers of automobiles on narrow road approaching in opposite directions, who failed to stop until impenetrable cloud of dust raised by third automobile in passing one of them had subsided, held negligent." Castile v. Richards (La.) 102 So. 398.

"A street railway company is liable for injuries sustained by a collision between a vehicle and a car, where the employees in charge of the car by the exercise of ordinary care could have avoided the accident, notwithstanding the negligence of the driver in the first instance in placing himself in a situation of peril." Acton v. Fargo & M. Street R. Co. 20 N. D. 434, 129 N. W. 225.

NUESSLE, J. The defendants, Floyd L. Parkins and Maxine Parkins, are father and son. Maxine was seventeen years old at the time of the accident hereinafter described. They lived in the village of New England. On April 3, 1925, the defendants were at the Woodmen's Hall helping to prepare for an entertainment that the Woodmen Lodge, of which they were members, was giving that evening. Some chairs were needed, so Maxine took his father's Ford truck (which he often drove) and accompanied by three other boys went to get the chairs. They drove south down Second avenue and turned west on Ninth street, a residence street. As they turned into Ninth street between block 27 on the north and block 24 on the south, they observed no one on the street. It was about half past five o'clock in the afternoon and the sun, then low in the west, was shining brightly. The sunlight on the wind-

shield made it difficult to see directly in front of the truck. Maxine pulled the visor of his cap down over his eyes, but was able to see only four or five feet ahead of the truck. He looked ahead as well as he could through the windshield to see if there was anything in the road. The cab on the truck was a homemade affair and it was not possible to tip the windshield. The sides of the cab were open. Maxine drove slowly—seven or eight miles per hour. He followed the beaten track along the middle of the street. An alley cuts blocks 27 and 24 from north to south. Lot 2 of block 27 extends along Ninth street from Second avenue to the alley. There were two buildings on lot 2. Some planks and a box were in the street close to the lot line south of the west end of this lot. When between fifty and a hundred feet from the alley Maxine saw some children in the street just out from the sidewalk line on the north side. They were about where the street and alley intersect. He also saw a woman (Mrs. Bowers) and a child on the south side of the street in the alley. He drove on and at the point of intersection of the alley with the street one of the boys shouted to him to look out and he felt a jar. He at once stopped the truck and getting out discovered that he had run over the infant son of the plaintiff. This child was about two and one-half years old. Maxine picked the baby up and carried him up the alley to his home on the north side of the block. Shortly thereafter the child died as a result of the accident. The child had been run over by the right rear wheel of the truck. The truck stopped within three or four feet after the accident. The child was dressed in a black coat and wore a red cap. According to the testimony of other witnesses he had walked into the street from the alley to the north just a few seconds before the accident. Maxine did not see the child nor did any of his companions. At the time of the accident he was watching the children on the north and the woman and child on the south and was driving carefully because of these children. Maxine knew there were many children in this neighborhood and that they sometimes played in the street, but he had never before seen any in this particular place.

The plaintiff brought the instant action to recover damages on account of the death of the child under the circumstances as above set out claiming negligence on the part of the defendants. Defendants denied having been guilty of any negligence and pleaded contributory negligence on

the part of the plaintiff in permitting his child to be in the street and various other defenses. The case was tried to a jury. The defendant had a verdict. Thereafter the plaintiff moved for a new trial upon the minutes of the court, setting forth the following grounds therefor: (1) Irregularity of the proceedings of the jury which prevented the plaintiff from having a fair trial. (2) Misconduct of the jury. (3) Insufficiency of the evidence to justify the verdict and that the verdict was against law. (4) Errors in law occurring at the trial and excepted to by the plaintiff. The court granted the motion. From the order thus entered granting a new trial the defendants perfected the instant appeal.

On this appeal the defendants contend that the trial court overstepped the bounds of his discretion in ordering the new trial and thus invaded the province of the jury by substituting his judgment for that of the jury as to vital questions of fact. While various grounds were set up by the plaintiff in his motion for a new trial, apparently none was urged or relied upon excepting that of the insufficiency of the evidence to sustain the verdict. No showing was made by affidavit or otherwise in support of the first and second grounds urged and no errors of law occurring at the trial were specified or assigned. The order granting the new trial recites that it is "based upon the plaintiffs, minutes of the court, judgment, motion of the plaintiff and specifications of insufficiency of the evidence and facts claimed to be conclusively established, and all the records and files in the action." The trial court in accordance with the provisions of § 7945, Comp. Laws 1913, filed a written memorandum setting forth the grounds on which he based his ruling, and it appears therefrom that it was based upon the insufficiency and unsatisfactory nature of the evidence.

The plaintiff argues, and this seems to have been the view of the trial court also, that Maxine knew the children of the neighborhood sometimes played in the streets; that when he turned west on Ninth street and the reflection of the sun on the windshield made it impossible for him to see any distance directly ahead, due care required either that he stop the car altogether or that he lean out of the sides of the car and thus view the roadway ahead of him, and that his failure to do either or both of these things was negligence as a matter of law.

Plaintiff insists that in driving down the street as he did Parkins

was to all intents and purposes a blind man and that it cannot be gainsaid that a blind man driving a truck down such a street would be guilty of negligence. We think, however, that the comparison is not apt. When Maxine turned west into Ninth street he naturally had a view of the street through the side window of the cab. His vision was not then obscured by reason of the sun's rays on the glass. He then observed no one in the street. It is true the child must have been somewhere near the place of the accident at that time, but it seems to us that the fact that he was not then seen was not necessarily due to the negligence of the defendant. There were buildings on the lot to the north of Ninth street. Planks and a box were on the street along the line of the sidewalk, just northeast of the spot of the accident, and from the evidence the jury may well have believed that the child was not then in the street. After defendant turned west on Ninth street he drove slowly. His car was under control, for at the time of the accident he stopped it within three or four feet after feeling the bump caused by running over the child. He looked ahead as well as he could and while he could see only five feet ahead of the radiator, yet ordinarily this would be far enough ahead so as to enable him to stop the car should any reason apparent to him require it. As he proceeded along the street he saw the children to the north and also saw Mrs. Bowers and her child to the south. It was his duty not only to look ahead but also to keep watch on each side, as he did. Bulger v. Yamaoka, 111 Wash. 646, 191 Pac. 786. The child walked into the roadway from the alley just a few seconds before the accident. Just when is not clear. The jury may well have found that it was after Maxine turned and started driving west. Under these circumstances it seems to us that there is good room for disagreement as to whether Maxine used due care. True, with the sun blinding his vision he was required to use greater care than would otherwise have been necessary, but whether it was negligence to proceed as he did depended upon all of the circumstances. As to this, reasonable men might differ. Ordinarily, the question of negligence is a question of fact to be determined by the jury. It becomes a question of law only when reasonable men can draw but one conclusion from the evidence. Pyke v. Jamestown, 15 N. D. 157, 107 N. W. 359; Solberg v. Schlosser, 20 N. D. 307, 30 L.R.A.(N.S.) 1111, 127 N. W. 91; McGregor v. Great Northern R. Co. 31 N. D. 471, 154 N. W. 261, Ann. Cas 1917E, 141;

Anderson v. Jamestown, 50 N. D. 531, 196 N. W. 753; Pederson v. O'Rourke, 54 N. D. 428, 209 N. W. 798; Gallagher v. Great Northern R. Co. ante, 211, 212 N. W. 839, just decided; Thomp. Neg. §§ 7387, et seq.

Many recent cases may be found dealing with the question of negligence in the driving of automobiles and there is a great diversity in the holdings. See Woodhead v. Wilkinson, 10 L.R.A. 291, and note, (181 Cal. 599, 185 Pac. 851); Schwalen v. W. P. Fuller & Co. 10 A.L.R. 296, and note (107 Wash. 476, 182 Pac. 592, 187 Pac. 367); Mathers v. Botsford, 32 A.L.R. 881, and note (86 Fla. 40, 97 So. 282); Rozycki v. Yantic Grain & Products Co. 99 Conn. 711, 37 A.L.R. 582, 122 Atl. 717; Castille v. Richard, 157 La. 274, 37 A.L.R. 586, 102 So. 398. Manifestly, the question of negligence with respect to the use of an automobile is no different in principle from the question of negligence generally. Whether or not there is negligence in any particular case depends upon the circumstances. It is impossible to set up any standard which shall be common to every case. The most that can be done is to apply to the acts of him who is charged with negligence the rule of reasonably prudent conduct under the attending circumstances. This being so the question of negligence ordinarily must be one of fact for the jury. The diversity of the holdings as evidenced in the cases cited above in itself clearly demonstrates the impossibility of establishing any fixed standard of negligence, and the difficulty in applying the measure of reasonably prudent conduct.

While the trial court in considering the motion for a new trial seems to have adopted the erroneous theory that the defendants were guilty of negligence as a matter of law, nevertheless we are not disposed to reverse the order. The order itself recites that it was based, among other things, upon plaintiff's "specifications of insufficiency of the evidence and facts claimed to be conclusively established." So it seems to us that we must consider the order as one based upon the insufficiency of the evidence.

Whether or not a new trial shall be granted rests largely in the sound discretion of the trial court. The action of the trial court in this regard will not be disturbed on appeal unless there is an abuse of discretion, and where a new trial is granted on the ground that the evidence is insufficient to sustain the verdict or judgment, the reviewing

court will consider and weigh the evidence only so far as may be necessary to determine the question whether the trial court acted within its discretion. See Braithwaite v. Aiken, 2 N. D. 57, 49 N. W. 419; Pengilly v. J. I. Case Threshing Mach. Co. 11 N. D. 249, 91 N. W. 63, 12 Am. Neg. Rep. 619; Aylmer v. Adams, 30 N. D. 514, 153 N. W. 419; Lemke v. Dougherty, 53 N. D. 382, 206 N. W. 223; Standard Oil Co. v. Kennedy, 54 N. D. 31, 208 N. W. 555.

"And the appellate court will uphold the ruling of the trial court granting a new trial on a discretionary ground when it would have refused to disturb the decision of that court had a new trial been denied; and will sustain such order even though the trial court would have been justified in reaching a different conclusion, and although the appellate court might deem a different conclusion the better one. Braithwaite v. Aiken, 2 N. D. 57, 49 N. W. 419; People v. Goldsworthy, 130 Cal. 600, 62 Pac. 1074. See also St. Anthony & D. Elevator Co. v. Martineau, 30 N. D. 425, 153 N. W. 416." Aylmer v. Adams, 30 N. D. 514, 153 N. W. 419.

The distinction between the duties of trial courts and the reasons and rules governing in the performance thereof, and those of appellate courts in matters of this sort, is well stated in the case of Pengilly v. J. I. Case Threshing Mach. Co. 11 N. D. 249, 91 N. W. 63, 12 Am. Neg. Rep. 619. We cannot do better than repeat what is there said: "An examination of the grounds of the application for the order appealed from will at once develop the fact that the trial court, in disposing of the problem presented upon the application, was not governed by fixed rules of law, and in the nature of the case could not be governed by any inflexible rule of law. When motions of this nature are presented to a court, they are classified as motions addressed to the discretion of the court. In considering the evidence adduced or that newly discovered, no fixed rules of law exist which could be decisive of the result of the investigation. Under such circumstances a margin of discretion is vested in trial courts, which permits them, with a view to promoting the ends of justice, to weigh the evidence, and, within certain limitations, act upon their own judgment with reference to its weight and credibility. Nor, in such cases will the court necessarily be governed by the fact that the verdict returned has the support of an apparent preponderance of the evidence. Unrighteous verdicts sometimes are sup-

ported by apparently substantial evidence, and to meet such exceptional cases the presiding judge, who sees and hears the witnesses, is vested with a discretion to vacate such verdicts and order a new trial in further-ance of justice. The rule that governs a court of review in this class of motions—i. e., those which appeal to judicial discussion—does not apply to trial courts, and hence the trial court is not debarred from granting or refusing a new trial by the mere fact that the verdict rests upon substantial or conflicting evidence. Hayne, New Trials, § 97. This discretion, however, is neither capricious, arbitrary, nor unre-stricted. It is, on the contrary, a reasonable discretion, to be exercised with great caution, and in cases of abuse the trial court will. be reversed by the reviewing court in this class of cases. The duties devolving upon a court of review in this class of cases are to be distinguished from those which govern in trial courts. In the reviewing tribunal the weight and credibility of testimony will only be considered with a view to determine whether the order made in an inferior court, when acting within the domain of discretion, was or was not an abuse of discretion. See 14 Enc. Pl. & Pr. 930, 985, and cases in note 1; Taylor v. Sherpe & K. Architectural Co. 47 Mo. App. 257. The rule applicable here is analo-gous to that applied where a new trial is sought on the grounds of im-. proper remarks made by counsel to a jury; i. e., the granting or refusing the application is within the discretion of the trial court. See Watson v. St. Paul City R. Co. 42 Minn. 46, 43 N. W. 904, and Sunberg v. Babcock, 66 Iowa, 515, 24 N. W. 19. In the federal courts, as at com-mon law, all motions for a new trial are addressed to the discretion of the trial court, and its ruling cannot be reversed. See 14 Enc. Pl. & Pr. 955. As to the application of this rule to newly discovered evidence, see id. 982, note 3, and Hayne, New Trials, p. 250. See also the South Dakota cases cited in Distad v. Shanklin, 11 S. D. 1, 75 N. W. 205. In the case at bar the order appealed from granted a new trial. Such orders, when based upon the insufficiency of the evidence, are rarely reversed by a reviewing court, and never except upon grounds which are strong and cogent. The reason for discriminating in favor of such orders is that they are not decisive of the case, but, on the contrary, only open the way for a reinvestigation of the entire case upon its facts and merits. See Patch v. Northern P. R. Co. 5 N. D. 55, 63 N. W. 207; Hicks v. Stone, 13 Minn. 434, Gil. 398; Cowley v. Davidson, 13 Minn.

92, Gil. 86; Morrison v. Mendenhall, 18 Minn. 238, Gil. 212; also 14 Enc. Pl. & Pr. 978, 987, and cases in note 1; also, id. p. 960."

Considering the record in this case we are not prepared to hold that there was an abuse of discretion on the part of the trial court in granting a new trial. Order affirmed.

BIRDZELL, Ch. J., and CHRISTIANSON, BURKE, and BURR, JJ., concur.